RENDERED: MARCH 5, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1583-MR

DOUG DEATHERAGE                                         APPELLANT

APPEAL FROM OWEN CIRCUIT COURT
v.            HONORABLE REBECCA LESLIE KNIGHT, JUDGE
ACTION NO. 15-CI-00103

PAMELA BREVING;
JOHN G. WRIGHT, ESQ., As Administrator of
the Estate of Starr Payton Deatherage, deceased;
CHARLES JEFFREY SIMS; BRET ALAN SIMS;
CHRISTOPHER BLAINE SIMS; and APRIL DEE BOSWELL      APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; COMBS AND JONES, JUDGES.

CLAYTON, CHIEF JUDGE: The husband of decedent Starr Payton Deatherage,

Douglas Deatherage ("Doug"), appeals from the Owen Circuit Court's

determination that it had subject matter jurisdiction to hear a petition filed pursuant

to Kentucky Revised Statutes (KRS) 395.510, which authorizes a legatee or distributee to file suit in circuit court to settle a probate estate. Doug contests the validity of the circuit court's determination that it had subject matter jurisdiction to hear the petition filed in this case and claims that the matter fell within the Owen District Court's exclusive jurisdiction. Additionally, Doug argues that the circuit court incorrectly determined that certain items of personal property belonged to Starr's estate and that two of Starr's heirs had been extinguished. Upon review of the facts and applicable law, we affirm as to all of Doug's allegations of error.

## FACTUAL AND PROCEDURAL BACKGROUND

Starr died intestate on January 6, 2014, survived by her husband of approximately thirty years, Douglas Deatherage. Starr was also survived by her five children from a previous marriage; two daughters – appellees Pamela Breving and April Boswell; and three sons – Charles Sims, Bret Sims, and Christopher Sims. Starr and Doug were the joint owners with survivorship of a farm which included a house and several outbuildings. Prior to her death, Starr had not worked outside the home in several years and received Social Security income, while Doug ran a trucking business. The couple also owned cattle.

On January 16, 2014, Doug filed a petition to dispense with the administration of Starr's estate (the "Estate"), claiming that the Estate's only asset at the time of Starr's death was a 2009 Dodge Journey that was worth less than

Doug's $15,000.00 spousal exemption. The Owen District Court entered an order on January 17, 2014, dispensing with the administration of the Estate.

On January 23, 2014, a fire occurred at Doug's property which destroyed a barn and other significant personal property, including several trailers and other large farm equipment. Kentucky Farm Bureau Mutual Insurance Company ("KFB") ultimately paid $145,108.24 to Doug pursuant to a homeowners' insurance policy under which Doug and Starr were the beneficiaries.

On April 21, 2014, Pamela filed with the Owen District Court a petition for probate and to be appointed as the administratrix of the Estate, alleging that the Estate possessed more assets than were listed in Doug's petition to dispense with administration. The Owen District Court entered an order on August 29, 2014, denying Pamela's motion.

Pamela then filed a notice of appeal of the denial of her motion to the Owen Circuit Court on September 19, 2014. On December 19, 2014, the circuit court reversed the district court's order denying Pamela's motion and remanded the case to the Owen District Court for an evidentiary hearing to determine the nature and value of the Estate's personal property.

Upon remand, the Owen District Court determined that the appointment of an independent public administrator was warranted to determine if there were other assets of the Estate subject to administration. Additionally, the

district court appointed a public administrator (the "Public Administrator") in March of 2015.

The Public Administrator conducted an investigation of potential estate assets and filed an inventory of those assets with the district court (the "Inventory"). Doug and Pamela filed objections to the Inventory, and the district court held a hearing. Thereafter, the district court entered a revised inventory of the Estate on September 25, 2015 (the "Revised Inventory"). According to the Revised Inventory, and taking into account Doug's exemptions and claims against the Estate as well as other debts, the Public Administrator determined that the Estate was insolvent.

Before the Public Administrator filed his final settlement for the district court's review and approval, Pamela filed a petition for administration and settlement in the Owen Circuit Court on November 20, 2015 (the "Petition"). The language of the Petition indicated that it was being filed pursuant to KRS[1] 395.510 and 395.515, that a dispute had arisen regarding the extent and value of personal property in the Estate, and that the dispute was such that a correct and lawful settlement of the Estate could not be obtained by the district court.

Doug filed a motion to dismiss the Petition on December 17, 2015, claiming that the Petition constituted an improper and unlawful appeal from an

---

[1] Kentucky Revised Statutes.

-4-

interlocutory order of the district court and that the subject matter of the Petition did not constitute an "adversary proceeding" such as to vest the circuit court with subject matter jurisdiction to hear the matter. The circuit court denied Doug's motion to dismiss on May 9, 2016, finding that, under KRS 24A.120(2), the district court has jurisdiction of matters involving probate except matters contested in an adversary proceeding. Because the circuit court found the matter to be an adversary proceeding, the circuit court determined that it had subject matter jurisdiction and that the Petition was not an interlocutory appeal.

Thereafter, the circuit court held a bench trial on September 28, 2017, to hear evidence. On March 19, 2019, the circuit court entered its findings of fact, conclusions of law, and order in which it again reiterated its finding that it had subject matter jurisdiction over the case. The order also made new determinations as to which items were considered assets of the Estate as well as their respective values. Specifically, the circuit court found that a tractor and round bailer that had been destroyed in the fire were co-owned by Starr and Doug, and therefore Starr had an insurable interest in those items of farm equipment. The circuit court noted that "[t]here was no evidence indicating the source of the funds for these purchases, and considering the value of these items, the Court can only presume that they were purchased with joint funds and that the couple considered them to be joint property." Therefore, the court held that $32,000.00 of the KFB insurance

payout was an asset of the Estate and included that sum in the total estate to be distributed to the heirs.

Thereafter, the circuit court ultimately approved Doug's claims against the Estate and his surviving spouse exemption. Additionally, the circuit court approved waivers and assignments of Christopher's and Bret's interests in the Estate to Doug. In sum, Doug was ordered to pay the Public Administrator's fee and to pay Pamela, April, and Charles $1,913.65 each in estate assets, with Doug to keep the remaining personal property for himself.

Doug filed a motion to alter, amend, or vacate the court's judgment on March 29, 2019, which the circuit court ultimately denied. This appeal followed.

Further facts will be developed as required to address the specific issues presented.

## ANALYSIS

### a. Standard of Review

Kentucky law provides that when a lower court is alleged to be acting without the requisite subject matter jurisdiction, the appellate court conducts a *de novo* review of a circuit court's determination that it has jurisdiction over the subject matter. *Basin Energy Co. v. Howard*, 447 S.W.3d 179, 184 (Ky. App. 2014). This Court reviews any questions of fact, or questions that involve both the law and the facts of the case, under a clearly erroneous standard, and "the

reviewing Court has greater latitude to determine whether the findings below were sustained by evidence of probative value." *Arterburn v. First Community Bank*, 299 S.W.3d 595, 598 (Ky. App. 2009) (citations omitted).

### b. <u>Discussion</u>

As a preliminary matter, Doug argues that Pamela's appellate brief deviates significantly from the format mandated by Kentucky Rule of Civil Procedure (CR) 76.12 and should therefore be stricken. Our options when an appellate advocate fails to abide by CR 76.12 are: "(1) to ignore the deficiency and proceed with the review; (2) to strike the brief or its offending portions . . . ; or (3) to review the issues raised in the brief for manifest injustice only[.]" *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010) (citations omitted). Because we do not find the deficiencies in the brief egregious enough to strike Pamela's brief, we will proceed with a review thereof. This Court will not, however, consider any matters referred to in Pamela's brief that are outside of the record on appeal. *See Telek v. Daugherty*, 376 S.W.3d 623, 626 (Ky. App. 2012).

Doug first argues that the circuit court did not have subject matter jurisdiction to make *de novo* rulings in this matter. Particularly, Doug maintains that the Petition was nothing more than an interlocutory appeal, as the district court's administration of the Estate had not been completed.

To address Doug's argument, we must examine the interplay between three statutes – KRS 24A.120, KRS 395.510, and KRS 395.515. KRS 24A.120(2) states that a "District Court shall have exclusive jurisdiction in: . . . [m]atters involving probate, *except matters contested in an adversary proceeding*. Such adversary proceeding shall be filed in Circuit Court in accordance with the Kentucky Rules of Civil Procedure *and shall not be considered an appeal*[.]" (Emphasis added.)

The definition of the term "adversary proceeding," while somewhat circuitous, is found in KRS 24A.120(3): "[m]atters not provided for by statute to be commenced in Circuit Court shall be deemed to be non[-]adversarial within the meaning of subsection (2) of this section and therefore are within the jurisdiction of the District Court[.]" Based on the foregoing language, the test of jurisdiction in the Circuit Court over probate matters is whether a statute exists that authorizes initiating suit in circuit court. Stated differently, the district court possesses jurisdiction over all probate actions except actions that by statute may be commenced in circuit court.

We next turn to KRS 395.510, which authorizes "[a] representative, legatee, distributee or creditor of a deceased person" to "bring an action in circuit court for the settlement of his estate[.]" Lastly, KRS 395.515 explains the types of issues that may be addressed and adjudicated by the circuit court, including:

a genuine issue concerning the right of any creditor, beneficiary or heir-at-law to receive payment or distribution, or if it appears that there is a genuine issue as to what constitutes a correct and lawful settlement of the estate, or a correct and lawful distribution of the assets[.]

A separate panel of this Court discussed the interplay of jurisdiction under KRS 24A.120 and KRS 395.510 in *Hale v. Moore*, 289 S.W.3d 567 (Ky. App. 2008). *Hale* involved a probate case in which the heirs to an estate disagreed with certain actions of the executrix of a will, particularly the actions of the executrix in distributing the assets of the estate and the method by which the executrix calculated her fees. *Id*. at 580. The primary issue discussed by the Court was whether "the mere filing of a complaint that questions the distribution of an estate [constitutes] the type of 'adversary proceeding' needed to transfer jurisdiction to circuit court." *Id*. at 579.

The *Hale* Court began its analysis by noting that its review of the applicable statutes and caselaw "disclose[d] no general definition of [the] term ['adversary proceeding']." *Id*. The Court went on to conclude that the beneficiaries' questioning of the action of the executrix in distributing the assets of the estate was "far more than an accounting matter," but rather "gave rise to precisely the type of 'adversary proceeding' contemplated in KRS 395.510(1)." *Id*. at 580. The Court noted that the beneficiaries "had no alternative but to

commence this action in the circuit court since the district court was without statutory power to render the judgment sought." *Id.*

In this case, we find the matter to be an "adversary proceeding" under KRS 24A.120(2). Undeniably, a specific statute – KRS 395.510 – authorized Pamela, as one of Starr's heirs, to commence a settlement action in circuit court. Therefore, because the statutory language explicitly states that such an action is not an appeal, Doug's arguments concerning the interlocutory nature of the district court's orders are inapplicable.

Moreover, we believe implicit in the power to adjudicate the issues delineated in KRS 395.515 is necessarily the authority to initially adjudicate the ownership and value of the assets claimed by the Estate, including disputes concerning ownership of personal property. In the matter before us, the Petition sought an adjudication of "the extent and value of the personal property of the Estate," as the dispute was "such that a correct and lawful settlement of the Estate" could not otherwise be obtained. It is clear here that Doug and Pamela have widely opposing views of the extent and value of the Estate. The proper settlement of the Estate and the proper distribution of assets of the Estate required that such issues be addressed. Accordingly, we conclude that the circuit court was vested with subject matter jurisdiction in this matter.

-10-

Doug next argues that KRS 395.510 and/or KRS 395.515 are not applicable in this situation because the statutes refer to the failure to make a settlement of a decedent's estate and do not authorize an original action in the circuit court when a party disagrees with the district court's rulings. To be sure, there is a window of opportunity for claims to be brought under KRS 395.510. However, such window closes when administration of the estate is complete. *See Wood v. Wingfield*, 816 S.W.2d 899, 905 n.8 (Ky. 1991) ("The statutory scheme of KRS 395.510 *et seq.* requires that the estate be in administration."). As a result, we believe the use of the term "settlement" in KRS 395.510 refers to the full process of administration, distribution, and closing, and the Petition was therefore timely.

Doug next argues that the Estate was not entitled to any part of the KFB insurance proceeds for certain of the farm equipment destroyed because the fire occurred after Starr's death. Specifically, Doug maintains that his testimony that the only asset titled in Starr's name was an automobile subject to a lien went unrefuted and uncontradicted by Pamela, and he asserts that there was no evidence to indicate that Starr had any interest in either the farm equipment at issue or in the insurance proceeds paid therefor.

We once again note that our standard of review of the circuit court's findings of fact is whether or not such findings are clearly erroneous. Here, we

cannot say that the circuit court's conclusion that the two items of farm equipment were jointly-owned was clearly erroneous. The circuit court considered the evidence of the value of the applicable farm equipment, as well as the fact that no evidence had been submitted indicating the source of the funds for the farm equipment. It was logical for the circuit court to conclude that the applicable farm equipment had been purchased with joint funds and that the couple considered it to be joint property, and we see no clear error.

Doug further argues that, because the fire occurred after Starr's death, there was no "chose-in-action" or insurance claim for the Estate to make at the time of her death. Thus, he claims that the Estate had no entitlement to insurance proceeds from a fire that occurred after Starr's death. However, in Kentucky:

> [t]he law is well settled that a fire insurance policy is a chose in action and does not partake of the nature of the property insured by it, and at least as between the beneficiaries of the estate . . . and the personal representative of the estate, the policy is personal property, and, if a loss insured against occurs after the death of the insured, the personal representative is entitled to collect for it . . . regardless of the fact that the beneficiaries of the estate would be entitled to the proceeds after the payment of debts, unless a different purpose is plainly manifested by the terms of the policy.

*Oldham's Trustee v. Boston Ins. Co.*, 189 Ky. 844, 226 S.W. 106, 107 (1920); *see also Richardson Adm'r v. German Ins. Co. of Freeport*, 89 Ky. 571, 13 S.W. 1, 2 (1890) ("the terms of a policy of insurance . . . should be liberally construed for the

-12-

benefit of the insured, and so as to effectuate, as far as may reasonably be done, the indemnity he justly expected."). Essentially, "the proceeds of such a policy is in the same nature as the proceeds of a promissory note in the hands of the personal representative, and is an asset of the estate, primarily for the payment of debts, and secondarily for distribution to those entitled thereto." *Kobs v. Insurance Co. of North America of Philadelphia, Pa.*, 248 Ky. 55, 58 S.W.2d 242, 243 (1933).

As a result, because the policy was valid and in force at both the time of Starr's death and at the time of the fire, and because Doug has produced no evidence of an express provision in the policy to the effect that it terminated upon Starr's death, it did not become void or inoperative upon Starr's death and by that reason alone.

Finally, Doug contends that the claims of Charles and April were "defaulted" and thus extinguished. On December 29, 2016, the circuit court granted Doug's motion for default judgment against Charles, as Charles had failed to answer or otherwise defend. Likewise, while April waived formal service and acknowledged receipt of process at the beginning of this matter in November of 2015, she failed to file any responsive pleadings or otherwise participate in the litigation.

We disagree, however, that either Charles's or April's failure to participate in the suit barred them from recovering their statutory share of the

inheritance.  The default judgment granted by the circuit court was granted on a defense, not on a claim by Doug for affirmative relief against Pamela or her siblings.  The only effect that the circuit court's granting of the motion for default judgment had against Charles was barring him from participating in the trial or bringing new claims against the Estate.  Doug has provided no authority indicating that the failure to appear in a circuit court settlement action destroys an heir's right to distribution.

## CONCLUSION

For the foregoing reasons, we affirm the Owen Circuit Court.


ALL CONCUR.

BRIEFS FOR APPELLANT:

Ruth H. Baxter
Carrollton, Kentucky

BRIEF FOR APPELLEE PAMELA BREVING:

Pamela Breving, *pro se*
Cincinnati, Ohio